**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

             Plaintiff,

vs.

LEON JOHNSON,

             Defendant.

No. CR 04-0108 LRR

**ORDER RE: MOTION
FOR NEW TRIAL**

_____

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................ 1

II.   PROCEDURAL BACKGROUND ............................. 2

III.  FACTUAL BACKGROUND ................................. 4

IV.  STANDARD OF REVIEW ................................. 10

V.   LEGAL ANALYSIS .................................... 10
          A. Count 1 ........................................ 11
          B. Counts 2 and 3 ................................. 18
          C. Count 4 ........................................ 20
          D. Count 5 ........................................ 21

VI. CONCLUSION ......................................... 25

## *I. INTRODUCTION*

The matter before the court is Defendant Leon Johnson's Motion for New Trial (docket no. 102). In his Motion, Defendant alleges he is entitled to a new trial on the following grounds: (1) the government presented insufficient evidence to convict him; (2)

the verdict is contrary to the weight of the evidence; and (3) the jury found him guilty based on an incorrect understanding of the facts of the case.

## II. PROCEDURAL BACKGROUND

On January 13, 2005, the grand jury returned a five-count Superseding Indictment[1] against Defendant. Count 1 charged on or about April 6, 2004, in the Northern District of Iowa and elsewhere, Defendant knowingly and intentionally distributed and attempted to distribute a mixture or substance containing a detectable amount of cocaine base (also called "crack cocaine") after having been convicted of a felony drug offense in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and 851. Count 2 charged on or about April 30, 2004, in the Northern District of Iowa, Defendant did knowingly possess, in and affecting commerce, one or more firearms after having been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count 3 charged on or about April 30, 2004, in the Northern District of Iowa, Defendant, an unlawful user of a controlled substance (marijuana), did knowingly possess, in and affecting commerce, one or more firearms in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Count 4 charged on or about April 30, 2004, in the Northern District of Iowa, Defendant did knowingly possess a firearm with a removed, obliterated, or altered manufacturer's serial number that had been shipped or transported in interstate commerce in violation of 18 U.S.C. §§ 922(k) and 924(a)(2). Count 5 charged on or about September 2, 2004, in the Northern District of Iowa, Defendant did knowingly and intentionally possess crack cocaine with the intent to distribute and attempt to distribute crack cocaine, within 1,000 feet of the real property constituting a school after having been convicted of a felony drug offense in violation of 21 U.S.C. §§ 841(a),

---

[1]Defendant was originally indicted on November 17, 2004.

841(b)(1)(B), 846, 851, and 860. The Superseding Indictment also charged and sought forfeiture of three firearms pursuant to 18 U.S.C. § 924(d)(1).

On February 16, 2005, the grand jury returned a five-count Second Superseding Indictment against Defendant. Pursuant to the Second Superseding Indictment, Count 1 charged on or about April 6, 2004, in the Northern District of Iowa and elsewhere, Defendant knowingly and intentionally possessed with intent to distribute, distributed, and aided and abetted the distribution of crack cocaine after having previously been convicted of one or more felony drug offenses in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851. Additionally, the Second Superseding Indictment charged Defendant with the same crimes in Counts 2 through 5 as charged in the Superseding Indictment and sought forfeiture of the three firearms.

A grand jury returned a Third Superseding Indictment against Defendant on March 2, 2005. The Third Superseding Indictment charged Defendant with the same five Counts and forfeiture of the three firearms as charged in the Second Superseding Indictment.[2]

The case was tried to a jury on March 14, 2005, through March 16, 2005. Defendant was personally present and represented by his attorney, John Bishop. Special Assistant United States Attorney Rebecca Goodgame Ebinger and Assistant United States Attorney Charles J. Williams represented the government. At the close of the government's case, Defendant orally moved for a judgment of acquittal pursuant to Federal

---

[2] The Second and Third Superseding Indictments differed in two ways. First, the Second Superseding Indictment stated "William C. McGhee" had previously been convicted in the Circuit Court for Cook County, Illinois, Case No. 2002CR1140601. The Third Superseding Indictment stated "William McGhee" had been convicted in that case. Both "William C. McGhee" and "William McGhee" are listed aliases of Defendant. Second, from the Second Superseding Indictment to the Third Superseding Indictment, the counts in the caption were renumbered.

Rule of Criminal Procedure 29. The court denied Defendant's motion. At the conclusion of all the evidence, Defendant orally renewed his motion for a judgment of acquittal and the court again denied the motion.[3] On March 17, 2005, the jury returned guilty verdicts on all five counts, including verdicts of guilty on both alternatives in Count 1. On March 17, 2005, the court signed a Preliminary Order of Forfeiture on the firearms pursuant to stipulation of the parties.

On March 24, 2005, Defendant timely filed the instant Motion for New Trial. The government filed a timely resistance to Defendant's Motion. Neither Defendant nor the government requested oral argument on the present Motion. The court, therefore, finds Defendant's Motion fully submitted and ready for decision based upon the briefs of the parties.

### III. FACTUAL BACKGROUND

After reviewing the record, the court finds the government offered evidence at trial proving the following:

Troy Perkins ("Perkins") testified that in the week preceding April 6, 2004, he became acquainted with Defendant. Perkins initially met Defendant when Defendant flagged him down in Cedar Rapids, Iowa at the intersection of 14th Street and 6th Avenue in Cedar Rapids, Iowa. Defendant asked if Perkins was "looking for something," which Perkins understood to mean was he looking for drugs to buy. On this occasion, Perkins purchased fifty dollars of crack cocaine from Defendant and used it. During the drug transaction, Perkins and Defendant exchanged contact information. Perkins referred to Defendant as "nephew."

---

[3] The government and Defendant agreed the distribution alternative in Count 1 should not be submitted to the jury because the government had not presented evidence proving Defendant distributed drugs in the Northern District of Iowa.

On April 6, 2004, Perkins was at his house in Iowa City. Perkins testified Defendant and someone else had come from Cedar Rapids that day in Perkins's car. He loaned Defendant his car to go to the mall in return for some crack. Defendant and the other individual were pulled over by the Iowa City Police in Iowa City in Perkins's car because of an improper lane change. After the encounter with the police, Defendant and his friend returned to Perkins's house and made some phone calls to get a ride. A female picked them up. Perkins described the woman as possibly being Mexican. Perkins understood Defendant was returning to Cedar Rapids.

On April 6, after Defendant and his friend had left Perkins's house, Perkins contacted Iowa City Police Detective Chris Akers ("Akers") about Defendant and the possibility of making a controlled buy from him. Before consulting with Akers, Perkins had arranged to purchase one-half ounce, or fourteen grams, of crack cocaine from Defendant. Perkins was working as a confidential informant for the Iowa City Police Department. Prior to April 6, 2004, Perkins, had been arrested for delivery of crack in state court. In return for a favorable recommendation for a fifteen-year suspended sentence, Perkins had agreed to cooperate with the Iowa City Police Department. At the time of Perkins's arrest on the state drug charges he also had a prior felony conviction for robbery.

On the night of April 6, 2004, Akers arranged to record a telephone call from Perkins to Defendant concerning the logistics of purchasing crack cocaine. At 8:58 p.m., Perkins called Defendant to find out when he would arrive in Iowa City. Perkins used his cell phone to make the call (telephone number 936-9091). Perkins called a cell phone registered to William McGee, an alias used by Defendant. Perkins told Defendant that he was tired of waiting for him and that if Defendant did not hurry, the potential purchaser was not going to wait. Defendant told Perkins he was on the interstate "doing about a

5

hundred" and he would arrive in about twenty minutes. Perkins asked Defendant if he knew where the HandiMart was in Iowa City. After Defendant said he did, Perkins asked "You know how to get to Dubuque Street and get off on Dubuque Street, right?" Defendant answered "Like we did last time." Perkins said "Right, okay come, that, that HandiMart store you passed."

After the phone call ended, Perkins and Akers drove to Handimart on Dubuque Street in Iowa City. Akers coordinated the location of the buy with Officers Jerry Blomgren ("Blomgren") and Scott Miller, and Detective Clarahan ("Clarahan"). Before Defendant and Greene arrived at HandiMart, the location for the buy was changed to the parking lot of the Hy-Vee grocery store ("Hy-Vee") in Coralville, Iowa because Johnson noticed police vehicles across the street from the HandiMart store.

Around 9:40 p.m. on April 6, 2004, Defendant and Greene arrived at the area behind Hy-Vee. Akers provided Perkins with five hundred and fifty dollars to use to purchase crack cocaine from Defendant. Perkins left the car occupied by Akers and approached the car occupied by Defendant and Greene. Greene sat in the driver's seat while Defendant sat in the passenger's seat. Perkins purchased the crack cocaine from Defendant through the passenger-side window. Perkins thought he had purchased fourteen grams of crack cocaine for five hundred dollars. In fact, he received approximately three grams of crack cocaine. Perkins kept fifty dollars as his payment for buying the drugs. A hidden audio recorder worn by Perkins recorded the controlled buy.

After completing the transaction, Defendant and Greene left Hy-Vee. Greene drove on Highway 6 towards Highway 965. The car then headed north on Interstate 380 toward Cedar Rapids. Blomgren pulled over Defendant and Greene at approximately mile marker 1 on Interstate 380 after their car veered onto the shoulder. Defendant or Greene told Officer Blomgren they were heading to Cedar Rapids. Then, Defendant and Greene

6

consented to a search of the vehicle. Blomgren found five hundred and forty-five dollars in the possession of Defendant. Blomgren confiscated the money, provided Defendant with a receipt, and did not arrest either Defendant or Greene.

After Defendant and Greene left Hy-Vee, Perkins called Defendant. Perkins complained to Defendant that he had paid for fourteen grams of crack cocaine and only received three grams. Defendant told Perkins the police had confiscated the proceeds of the sale and he was going to get his girlfriend and come back down to Iowa City to claim the confiscated money. In April 2004, Defendant's girlfriend, Christiana Boswell ("Boswell"), lived in Marion, Iowa.

Criminal Specialist Terry Rowe ("Rowe") tested the substances Defendant sold to Perkins and concluded it contained a detectable amount of cocaine base.

Later in April, Defendant had another incident with law enforcement. On April 30, 2004, Stevie Williams ("Williams") and Tyrone Redding ("Redding") went to visit Boswell at 2981 Ninth Street, apartment number 6 ("the apartment"), in Marion, Iowa. Boswell was described as dark skinned, but not black. After Williams and Redding knocked on the door to Boswell's apartment, Boswell appeared. Defendant then appeared behind her holding two handguns, one aimed at Williams and one aimed at Redding. Defendant spouting profanity asked Williams and Redding what they were doing there. Defendant told Williams and Redding he was going to "pop"(shoot) them. Williams and Redding explained they were sorry, they did not know Boswell had a boyfriend and then left the apartment complex without further incident.

After Williams returned home, he contacted the Marion Police Department at the insistence of his wife. Williams reported Defendant had threatened him and Redding when they had stood in the hallway outside of the apartment. Williams showed the police where the incident involving Defendant had occurred and described the guns that had been

brandished by Defendant.

After listening to Williams's account of the events of April 30, 2004, Officer Jeffrey Hartwig ("Hartwig") and Sergeant Richard Holland ("Holland") went to 2981 9th Street in Marion, Iowa with Williams. After Williams identified the apartment building in which Boswell lived, Williams was sent home. The officers knocked on the door to apartment 6. After a few minutes passed, the door opened and Boswell and Defendant were standing inside the door of the apartment. The officers then detained Boswell and Defendant and completed a protective sweep of the apartment to search for any other persons who may have been present. After Hartwig and Holland completed this sweep, the officers contacted Detective Lance Miller ("Miller"). Miller came to the apartment, discussed the situation with the officers and applied for a search warrant. A search warrant for the apartment was issued. According to the officers, the apartment was sparsely furnished. There was a mattress on the floor in the middle of the living room near or on which three loaded handguns and marijuana were found. Miller found a loaded Ruger .357 Blackhawk model, serial number 35-46921, in a plastic bag on the mattress in the living room. The outline of the Ruger .357 could be seen through the plastic bag. The police officers found two guns between the mattress and a wall (a loaded Davis Industries model P-380, .380 caliber, serial number # AP467702, and a loaded Lorcin model L 9 mm, serial number obliterated). Defendant denied the marijuana belonged to him; however, he admitted to using marijuana after the officers discovered it.

Later in 2004, Defendant had yet another incident with law enforcement. On September 2, 2004, the Cedar Rapids Police received a report that several individuals were gambling in a parking lot located at the 1400 block of Fifth Avenue in southeast Cedar Rapids, Iowa. When the officers approached the group gambling in the parking lot, two individuals ran away, one man stayed put, and Defendant walked away quickly. As

8

Officer Bryan Furman ("Furman") followed Defendant as he walked away, Furman saw Defendant drop cash on the ground. Furman then apprehended Defendant. Furman put handcuffs on Defendant, searched him for weapons and placed him in the back seat of a police car.

Furman detained Defendant in front of 1419 Fifth Avenue, Cedar Rapids, Iowa. After Furman placed Defendant in the backseat of a police car, Boswell approached the police car requesting Defendant return her cellular phone. Furman allowed Defendant, while his hands were handcuffed behind his back, to reach into his pocket to retrieve Boswell's cellular phone. When Defendant handed the cellular phone to Boswell through the open car door, Defendant dropped a plastic bag on the ground. Furman recovered the bag. The bag contained several smaller baggies containing user quantities of crack cocaine. Renee Brown ("Brown"), a forensic chemist, tested the substances in the bag, confirmed the substance was cocaine base ("crack") and concluded the total weight of crack cocaine dropped by Defendant was approximately five and one-half grams.

The parties entered into several stipulations. First, Defendant and the government stipulated the firearms seized in the search of Boswell's apartment on April 30, 2004, had traveled in interstate commerce at some point prior to the time the firearms were found in the State of Iowa. Second, Defendant and the government stipulated to two felony convictions: (1) on or about September 3, 2002, Defendant, using the name William McGhee, was convicted of the felony offense of possession with the intent to distribute a Schedule I or Schedule II narcotic; and (2) on or about January 24, 2002, Defendant, using the name Terrell Hill, was convicted of the felony offense of manufacture or delivery of between two and one-half and ten grams of cannabis on or near the real property constituting a school. Third, Defendant and the government stipulated McKinley Middle School, located at 620 Tenth Street S.E., Cedar Rapids, Iowa, is a public secondary

school.

## IV. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Under Rule 33, district courts are granted broad discretion in considering motions for a new trial. *United States v. Wilkins*, 139 F.3d 603, 604 (8th Cir. 1998). A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)). However, unless the district court "ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.* (citing *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000)); *see also Ortega v. United States*, 270 F.3d 540, 547 (8th Cir. 2001) (noting that a district court may grant a new trial under Rule 33 "only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred").

The Eighth Circuit Court of Appeals has noted that district courts enjoy more latitude in granting new trials under Rule 33 than in granting motions for acquittal under Federal Rule of Criminal Procedure 29. *Campos*, 306 F.3d at 579. However, "[m]otions for new trials based on the weight of the evidence are generally disfavored," and therefore district courts should exercise their Rule 33 authority "sparingly and with caution." *Id.*; *see also United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

## V. LEGAL ANALYSIS

In support of Defendant's Motion for New Trial, Defendant argues there was insufficient evidence adduced at trial to prove beyond a reasonable doubt Defendant's conduct satisfied the elements of each of the offenses with which Defendant had been

charged.  With regard to Count 1, Defendant argues the jury returned a guilty verdict based on the incorrect assumption that on the night of April 6, 2004, Blomgren pulled Defendant over on a traffic stop in the Northern District of Iowa when in fact the traffic stop occurred in the Southern District of Iowa.  With regard to Counts 1 through 5, Defendant contends the guilty verdicts are without sufficient support in the evidence, and, therefore, constitute a miscarriage of justice such that the interests of justice require the court to intervene.

In resistance to Defendant's Motion, the government asserts each element of each Count was proved beyond a reasonable doubt. Specifically, the government concedes, for purposes of Defendant's Motion for New Trial, the jury mistakenly believed the traffic stop occurred in the Northern District of Iowa, and argues, regardless of any mistaken assumption, sufficient evidence had been presented to the jury to support a conviction on all Counts.

## A. Count 1

The jury was instructed that it could find Defendant guilty of Count 1 of the Third Superseding Indictment under one or both the following two alternatives: (1) committing the offense of knowingly and intentionally possessing crack cocaine with the intent to distribute it; or (2) committing the offense of aiding and abetting the distribution of crack cocaine. Final Jury Instr. No. 16.

In order for the jury to convict Defendant of the crime of knowingly and intentionally possessing crack cocaine with the intent to distribute, the government had to prove:

> *One*,          on or about April 6, 2004, the defendant was in
>                  possession of a mixture or substance containing
>                  a detectable amount of cocaine base;
> *Two*,          the defendant knew he was in possession of the

mixture or substance containing a detectable amount of cocaine base; and

*Three,* the defendant intended to distribute some or all of the mixture or substance containing a detectable amount of cocaine base to another person.

*Id*.

In the alternative, the jury was instructed Defendant could be convicted of Count 1 if he aided and abetted the distribution of crack cocaine. To have aided and abetted the commission of the crime of distribution of crack cocaine, the government had to prove Defendant must:

*One,* have known the crime of distribution of a mixture or substance containing a detectable amount of cocaine base was being committed or going to be committed;

*Two,* have knowingly acted in some way for the purpose of causing, encouraging, or aiding the crime of distribution of a mixture or substance containing a detectable amount of cocaine base; and

*Three,* have intended that the crime of distribution of a mixture or substance containing a detectable amount of cocaine base be committed.

*Id*. Additionally, the jury was instructed Defendant could only be convicted of aiding and abetting the distribution of crack cocaine if the government proved beyond a reasonable doubt that all of the essential elements of distributing crack cocaine were committed by some person or persons and that Defendant aided and abetted the commission of that crime. *Id*. The court instructed the jury that the elements of the crime of distributing crack cocaine are:

*One,* an individual intentionally transferred a mixture or substance containing a detectable amount of

|         | cocaine base; and |
| *Two*,  | at the time of the transfer, the individual knew that it was a mixture or substance containing a detectable amount of cocaine base. |

Final Jury Instr. No. 22.

Defendant argues the government presented insufficient evidence for the jury to convict Defendant under either alternative of Count 1. Additionally, Defendant argues the jury convicted Defendant on Count 1 based on a faulty understanding of the facts.

First, the government argues the testimony of Perkins, Akers, Blomgren, Detective George Aboud ("Aboud"), and Rowe as well as the exhibits admitted into evidence support the verdict on Count 1. Specifically, the government identifies the audio recordings of the telephone calls between Perkins and Defendant and the controlled buy as well as the crack cocaine purchased from Defendant as evidence supporting the verdict on Count 1.

The court finds the government presented sufficient evidence at trial supporting the conviction of Defendant on Count 1 under the first alternative. Regarding the first and second elements, Perkins and Akers testified that on April 6, 2004, Defendant offered to sell and actually sold crack cocaine to Perkins for five hundred dollars. Audio recordings of both the telephone calls between Perkins and Defendant arranging the transaction and the controlled buy proved Defendant offered to sell and actually sold crack cocaine on April 6, 2004. Rowe tested the substance Defendant sold to Perkins and concluded the substance contained a detectable amount of cocaine base, and the net weight of the entire mixture or substance was approximately two and one-half grams. Regarding the third element, Perkins arranged to purchase crack cocaine from Defendant on the afternoon of April 6, 2004. The circumstantial evidence established that Defendant and Greene drove from Cedar Rapids to Iowa City to sell crack cocaine to Perkins. Blomgren confiscated the money Perkins used to purchase the crack cocaine from Defendant shortly after the

sale. Therefore, the court finds the government presented sufficient evidence to sustain Defendant's conviction on Count 1.

The court finds the interests of justice do not demand Defendant be granted a new trial on Count 1 on grounds the government presented insufficient evidence to support the conviction because the government proved each element of the first alternative. *See* 3 Charles Alan Wright, Nancy J. King, & Susan R. Klein, Federal Practice and Procedure § 512 (3d ed. 2004) ("If a defendant succeeds in demonstrating that one potential ground of decision was improper, the error will be considered harmless if the special verdict shows that the verdict rests upon a valid ground as well.") (citing *United States v. Najjar*, 300 F.3d 466, 480 (4th Cir. 2002)).

Second, Defendant argues the court should order a new trial in the interests of justice because the jury convicted Defendant based on an incorrect understanding of the facts of the case. Defendant alleges the jury convicted Defendant based on the assumption Defendant had been pulled over in the Northern District of Iowa on the night of April 6, 2004. According to Blomgren's testimony, Defendant was pulled over on a routine traffic stop on Interstate 380 around mile marker 1. Defendant and the government agree the traffic stop on the night of April 6, 2004, occurred in the Southern District of Iowa.

Defendant asserts a note submitted to the court by the jury asking questions about the Northern and Southern Districts of Iowa demonstrates the jury convicted Defendant on a mistaken understanding of the facts of the case. The jury note[4] read:

> Please define Northern District and Southern District re:
>   • Count #1

---

[4] Although the text of the jury note is ambiguous, for purposes of Defendant's Motion for New Trial, the government accepts Defendant's interpretation of the jury note that the jury thought the traffic stop of the night of April 6, 2004, had taken place in the Northern District of Iowa.

- • Buy was in Southern District
- • Stop was made in [Northern] District

- • Should this Count (#1) be tried in Southern District?

- • Where is the line between Northern & Southern District?

In response to the jury note, the court replied:

> I received your note, a copy of which is attached. You are instructed that the line dividing the Northern and Southern Districts is on the county line between Johnson and Linn County. With regard to the other question, please reread the instructions, consider the evidence and continue to deliberate.

The jury was instructed in the following manner regarding its examination of whether Defendant committed the crimes charged in the Indictment in the Northern District of Iowa:

> You will note that the Indictment charges that these offenses occurred in the Northern District of Iowa.
>
> The government must prove by the preponderance of the evidence that the offenses charged were begun, continued, or completed in the Northern District of Iowa.
>
> To prove something by the preponderance of the evidence is to prove that it is more likely true than not true. This is a lesser standard than proof beyond a reasonable doubt. The requirement of proof beyond a reasonable doubt applies to all other issues in the case.
>
> You are instructed that Iowa City, Iowa, and Coralville, Iowa, are located in the Southern District of Iowa. Cedar Rapids, Iowa, and Marion, Iowa, are in the Northern District of Iowa.

Final Jury Instr. No. 23.

The argument by Defendant that the jury convicted him based on a misunderstanding of the facts of the case asks the court to speculate on the reasons why the jury reached its verdict. The Court of Appeals for the Eighth Circuit has stated, "we

15

do not speculate on the jury's reasons for the decision." *Sera v. Norris*, 400 F.3d 538, 546 n.4 (8th Cir. 2005); *see Dunn v. United States*, 284 U.S. 390, 394 (1932) ("[V]erdicts cannot be upset by speculation or inquiry into [a mistake on the part of the jury]."). The United States Supreme Court has stated:

> [A] criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. . . . Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. . . . The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilt beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary.

*United States v. Powell*, 469 U.S. 57, 67 (1984). Because courts do not speculate about the reasons for a verdict, the court will treat Defendant's argument that the interests of justice warrant a new trial because the jury did not understand the facts of the case as an argument that the interests of justice warrant a new trial because the government presented insufficient evidence to support Defendant's conviction.

The government asserts it presented sufficient evidence to the jury to prove by a preponderance of the evidence that the possession of crack cocaine with the intent to distribute, as charged in Count 1 of the Third Superseding Indictment, was begun and continued in the Northern District of Iowa. Specifically, the government alleges Defendant and Greene traveled from Cedar Rapids to Coralville to distribute crack cocaine to Perkins on the night of April 6, 2004. As evidence of this proposition, the government offers that Defendant and Perkins had previously interacted in Cedar Rapids, Defendant resided in Cedar Rapids, Defendant's girlfriend resided just north of Cedar Rapids, in Marion, the

phone calls recorded on April 6, 2004, indicated Defendant was coming from Cedar Rapids, Perkins provided Defendant with directions to Handimart in Iowa City indicating it was the same store he had previously gone by (perhaps earlier that day), and Defendant or Greene informed Blomgren they were headed to Cedar Rapids when he pulled over their vehicle. According to the government, this indicates the transaction was begun and continued in the Northern District of Iowa and was consummated in the Southern District of Iowa.

The court finds sufficient evidence was presented at trial to support the jury's finding that Defendant's possession of crack cocaine with the intent to distribute was begun and continued in the Northern District of Iowa. Defendant's argument assumes the jury could only find that Count 1 was begun, continued, or completed in the Northern District of Iowa if the jury thought the traffic stop on the night of April 6, 2004, occurred in the Northern District of Iowa. The government proved the crime charged in Count 1 was begun and continued in the Northern District of Iowa in several ways other than the location of the traffic stop on the night of April 6, 2004. In addition to the reasons set forth by the government, Perkins testified that on the afternoon of April 6, 2004, Defendant and Greene called a friend in Cedar Rapids to come to Iowa City and give them a ride back to Cedar Rapids. After Defendant left Iowa City to return to Cedar Rapids, Perkins called Defendant to arrange to purchase crack cocaine on the night of April 6, 2004. The circumstantial evidence showed Perkins arranged to purchase drugs from Defendant when Defendant was in the Northern District of Iowa and Defendant left the Northern District of Iowa to consummate the sale in the Southern District in Iowa.

Therefore, the court concludes the government presented evidence sufficient to support the conclusion by a preponderance of the evidence that the crime charged in Count 1 was begun and continued in the Northern District of Iowa and finds the interests

of justice do not warrant granting Defendant a new trial on Count 1.

### B. Counts 2 and 3

In order for the jury to convict Defendant of the crime charged in Count 2 of the Third Superseding Indictment, being a felon in possession of a firearm, the government had to prove:

> *One*,      the defendant was convicted of a felony offense, that is a crime punishable by imprisonment for a term exceeding one year;
>
> *Two*,      the defendant thereafter knowingly possessed one or more firearms, that is
>
> (1)      a loaded Ruger .357 magnum stainless revolver, Blackhawk model, serial number 35-46921;
>
> (2)      a loaded Davis Industries model P-380, .380 caliber, serial number #AP467702; and/or
>
> (3)      a loaded Lorcin model L9mm., 9 mm, serial number obliterated
>
> *Three*,      the firearm or firearms were transported across a state line at some time during or before the defendant's possession of them.

Final Jury Instr. No. 17. Similarly, to convict Defendant of the crime charged in Count 3 of the Indictment, being a drug user in possession of a firearm, the government had to prove:

> *One,*      on or about April 30, 2004, the defendant was an unlawful user of controlled substances, that is marijuana;
>
> *Two*,      the defendant knowingly possessed one or more firearms, that is
>
> (1)      a loaded Ruger .357 magnum stainless revolver, Blackhawk model, serial number 35-46921;
>
> (2)      a loaded Davis Industries model P-380,

.380 caliber, serial number #AP467702; and/or

(3)      a loaded Lorcin model L9mm., 9 mm, serial number obliterated

while he was an unlawful user of a controlled substance; and

*Three*,      the firearm or firearms were transported across a state line at some time during or before the defendant's possession of them.

Final Jury Instr. No. 18.

Defendant asserts the government presented insufficient evidence for the jury to convict Defendant on Counts 2 and 3. The government argues the testimony of Williams, Miller, Hartwig, Holland, Officer Cory Berning, and Aboud, as well as the stipulations as to the interstate nexus of the firearms and his prior felony convictions, support the convictions. The government also asserts the photographs taken and the firearms and drugs seized at the apartment support the guilty verdicts on Counts 2 and 3.

The court finds sufficient evidence was presented at trial to support the jury's verdicts on Counts 2 and 3. Regarding the first element of Counts 2 and 3, Defendant's own admissions are sufficient evidence. As to Count 2, Defendant stipulated he had been previously convicted of a felony offense punishable by a term of imprisonment exceeding one year, and as to Count 3, Hartwig testified Defendant admitted using marijuana when the police searched the apartment on April 30, 2004. Moreover, in a police report, Hartwig noted Defendant appeared to be under the influence of narcotics when the police searched the apartment on April 30, 2004. Therefore, the court concludes Defendant previously had been convicted of a crime punishable by a term of imprisonment in excess of one year and Defendant was a user of marijuana on or about April 30, 2004.

Regarding the second element of Counts 2 and 3, the government presented evidence that Defendant possessed three firearms on April 30, 2004. Williams testified

Defendant held two handguns when he answered the door to the apartment and threatened them. Pursuant to a search warrant executed shortly after Defendant had threatened Williams and Redding at the door to the apartment, the Marion Police discovered two handguns matching the description given by Williams in the apartment where Defendant had threatened Williams. Additionally, law enforcement officers found a third weapon in the apartment. The firearms match the descriptions in the Third Superseding Indictment. Thus, the court finds the evidence supports the conclusion Defendant possessed firearms on April 30, 2004.

Regarding the third element of Counts 2 and 3, Defendant stipulated the firearms seized in the search of the apartment on April 30, 2004 had traveled in interstate commerce. Therefore, the court finds the interests of justice do not warrant granting Defendant a new trial on Counts 2 and 3.

### C. Count 4

In order for the jury to convict Defendant of the crime charged in Count 4 of the Third Superseding Indictment, being in possession of a firearm with a removed, obliterated, or altered manufacturer's serial number, the government had to prove:

|  |  |
|---|---|
| *One,* | on or about April 30, 2004, the defendant knowingly possessed a firearm; |
| *Two*, | that firearm's importer's or manufacturer's serial number had been removed, obliterated, or altered; |
| *Three*, | the defendant knew the importer's or manufacturer's serial number had been removed, obliterated, or altered; and |
| *Four*, | the firearm had previously been shipped or transported in interstate commerce. |

Final Jury Instr. No. 19.

Defendant asserts the government presented insufficient evidence for the jury to

convict Defendant on Count 4. The government replies the same evidence supporting Defendant's convictions on Counts 2 and 3 also supports the conviction on Count 4.

In Part V.B., the court found the government presented sufficient evidence supporting the conviction of Defendant on Counts 2 and 3. The evidence presented by the government in support of the second and third elements of Count 2 and 3 also proves the first and fourth elements of Count 4. For the reasons set forth in Part V.B., the court finds the government presented sufficient evidence supporting the first and fourth elements of Count 4.

Regarding the second element, the search of the apartment on April 30, 2004, recovered one loaded Lorcin model L9mm. The serial number on this gun had been obliterated. The government offered the gun as an exhibit and Agent Mike Wempen and Miller testified the serial number had been drilled off the Lorcin model L9mm. Regarding the third element, Williams's description of one of the guns brandished by Defendant matched the Lorcin model L9mm. Defendant could not have held the Lorcin model L9mm without knowing the serial number had been obliterated. The court finds sufficient evidence was presented at trial to prove the second and third elements of Count 4. Therefore, the court finds the interests of justice do not warrant granting Defendant a new trial on Count 4.

### D. Count 5

In Count 5, the jury was instructed that it could find Defendant guilty under one or both of the following two alternatives: (1) committing the offense of possessing crack cocaine with the intent to distribute it within 1,000 feet of a school or (2) committing the offense of attempting to distribute crack cocaine within 1,000 feet of a school. Final Jury Instr. No. 20.

In order for the jury to convict Defendant of the crime of knowingly and

intentionally possessing crack cocaine with the intent to distribute it within 1,000 feet of the real property constituting a school, the government had to prove:

> *One*,      on or about September 2, 2004, the defendant possessed 5 grams or more of a mixture or substance containing a detectable amount of cocaine base;
>
> *Two*,      the defendant knew he was in possession of the mixture or substance containing a detectable amount of cocaine base;
>
> *Three,*      the defendant intended to distribute some or all of the mixture or substance containing a detectable amount of cocaine base to another person; and
>
> *Four*,      the defendant possessed the mixture or substance containing a detectable amount of cocaine base with the intent to distribute it within 1,000 feet of the real property constituting a school, that is, McKinley Middle School.

*Id*.

In the alternative, the jury was instructed Defendant could be convicted of Count 5 if Defendant attempted to distribute crack cocaine within 1,000 feet of the real property constituting a school. The crime of attempting to distribute five grams or more of a mixture or substance containing a detectable amount of cocaine base within 1,000 feet of a school, as charged in Count 5 of the Third Superseding Indictment, has five essential elements, which are:

> *One*,      on or about September 2, 2004, the defendant intended to distribute a mixture or substance containing a detectable amount of cocaine base to another person;
>
> *Two*,      the defendant knew the material he then intended to distribute was a controlled substance, specifically a mixture or substance containing a

|  | detectable amount of cocaine base; |
| *Three*, | the defendant voluntarily and intentionally carried out some act which was a substantial step toward distribution of a mixture or substance containing a detectable amount of cocaine base to another person; |
| *Four*, | the defendant attempted to distribute the mixture or substance containing a detectable amount of cocaine base to another person within 1,000 feet of the real property constituting a school, that is, McKinley Middle School; and |
| *Five*, | the amount involved in the offense was 5 grams or more of a mixture or substance containing a detectable amount of cocaine base. |

*Id.*

Defendant asserts the government presented insufficient evidence to support the conviction on Count 5. The government argues the testimony of Furman, Officer Graham Campsure, Derek Peck ("Peck"), and Brown proved beyond a reasonable doubt that Defendant committed the offense alleged in Count 5.

The count finds the government presented sufficient evidence supporting the conviction of Defendant on Count 5 under either the first or the second alternative. Regarding the first element of the first alternative and the fifth element of the second alternative, Defendant possessed more than five grams of crack cocaine. The evidence proved that on September 2, 2004, Defendant dropped a plastic bag containing several other plastic bags; each smaller plastic bag contained crack cocaine. Defendant dropped the plastic bag when handing a cellular phone to Boswell in an attempt to discard the crack cocaine before the police searched him at the police station. The total weight of the substance was approximately five and one-half grams. Therefore, the court concludes the government presented sufficient evidence that Defendant possessed more than five grams

of a mixture or substance containing a detectable amount of cocaine base on September 2, 2004.

Regarding the second elements of the first and second alternatives, the court finds Defendant knowingly possessed crack cocaine on September 2, 2004. Evidence shows Defendant attempted to discard the crack cocaine by dropping it outside of the police car in an effort to escape punishment. This demonstrates Defendant knew he possessed an illegal substance.

Regarding the third element of the first alternative and the first and third elements of the second alternative, the evidence adduced at trial proved beyond a reasonable doubt Defendant intended and attempted to distribute crack cocaine on September 2, 2004. The plastic bag Defendant dropped contained several smaller plastic bags each containing a user quantity of crack cocaine. Such packaging is consistent with an intent to distribute crack cocaine to others. Moreover, the evidence proved Defendant attempted to distribute the crack cocaine to Boswell by dropping it near her while he was in police custody. The court finds the evidence presented by the government proved Defendant intended and attempted to distribute crack cocaine and had taken substantial steps towards distributing crack cocaine.

Regarding the fourth elements of the first and second alternatives, the court finds the government proved Defendant possessed crack cocaine within 1,000 feet of the real property constituting a school. Defendant stipulated McKinley Middle School constitutes a school. The evidence showed Furman detained Defendant at 1419 Fifth Avenue. The evidence also showed a distance of approximately 606.7 feet separates 1419 Fifth Avenue from the deed of the property on which McKinley Middle School is located. The court finds the government presented sufficient evidence showing Defendant intended to distribute and attempted to distribute crack cocaine within 1,000 feet of the real property

constituting a school. Therefore, the court concludes the interests of justice do not demand a new trial on Count 5.

## VI. CONCLUSION

For the reasons stated above, the court **DENIES** Defendant Leon Johnson's Motion for New Trial (docket no. 102).

**IT IS SO ORDERED.**

**DATED** this 23rd of May, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA